**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COGNIZANT TECHNOLOGY SOLUTIONS CORPORATION, et al., | Civil Action No. 23-3320 (PGS) (RLS) |
| Plaintiffs/Movants, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| UNITED STATES INTERNAL REVENUE SERVICE, et al., | |
| Defendants/Respondents. | |

**SINGH, United States Magistrate Judge**.

   **PRESENTLY** before the Court is a Motion by Cognizant Technology Solutions Corporation and Cognizant Technology Solutions U.S. Corporation (collectively, "Cognizant") to compel the United States Internal Revenue Service (the "IRS") and the United States Department of Labor (the "DOL") (collectively, the "Agencies") to produce records responsive to requests and subpoenas served pursuant to the Agencies' respective administrative procedures.[1]  On April 28, 2023, Cognizant initiated the above-captioned matter in the United States District Court for the District of Columbia; on June 7, 2023, the District of Columbia transferred this matter to this Court because the underlying action is pending here, at *Franchitti v. Cognizant Tech. Solutions Corp.*, Civ. No. 17-6317 (D.N.J.)[2] (the "Underlying Action").[3]  The Court considers the Motion together with briefing related to the subpoenas that the parties previously filed in the Underlying Action,

---

[1] Civ. No. 23-3320, Doc. No. 1-3 and -6.
[2] Citations herein reference the respective Civil Action Numbers for both the above-captioned matter and the Underlying Action.
[3] Civ. No. 23-3320, Doc. Nos. 1, 7.

including the Agencies' respective Cross-Motions to Quash.[4]  On March 11, 2024, the Court heard

oral argument on the Motions.  For the reasons set forth below, and for good cause shown,

Cognizant's Motion to Compel is hereby GRANTED and the Agencies' respective Cross-Motions

to Quash are DENIED.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

As the facts are well-known to the parties and the Court, they are not set forth at length.

Instead, only those facts and procedural history related to the instant Motions are discussed herein.

### A.    THE UNDERLYING ACTION

The above-captioned matter relates to a *qui tam* matter initiated on August 22, 2017 by

Relator Jean-Claude Franchitti ("Relator"), whom Cognizant had previously employed.  In general

terms, Relator alleges that Cognizant fraudulently misused certain work visas to import and

employ foreign workers in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.[5]

The United States declined to intervene by way of Notice of Election publicly filed on July 17,

2020.[6]  On January 27, 2021, Relator filed a First Amended Complaint ("FAC") in response to

Cognizant's motion to dismiss.[7]  On February 17, 2021, Cognizant moved to dismiss the FAC.[8]

On August 17, 2021, the Court granted in part and denied in part Cognizant's motion to dismiss,

---

[4] *See* Civ. No. 17-6317, Doc. Nos. 108, 128, 129, 138, 139, and 166.  On June 29, 2023, counsel for Cognizant filed a letter on the docket in the Underlying Action requesting that the Court "consider the authorities submitted in the . . . briefing on the D.N.J. Motion[] to Compel instead of the authorities submitted in the briefing on the D.D.C. Motion[] to Compel."  Civ. No. 17-6317, Doc. No. 166.  The Agencies consented to Cognizant's letter and the requests raised therein.  The Court thus considers the parties' briefs filed in the Underlying Action, including the Agencies' respective Cross-Motions.  *See* Civ. No. 17-6317, Doc. Nos. 128, 129.
[5] *See generally* Civ. No. 17-6317, Doc. No. 1.
[6] *See* Civ. No. 17-6317, Doc. No. 4.
[7] Civ. No. 17-6317, Doc. Nos. 16, 17.
[8] Civ. No. 17-6317, Doc. No. 18.

sustaining Relator's reverse false claim brought pursuant to 31 U.S.C. § 3729(a)(1)(G) and dismissing Relator's FCA claims brought pursuant to 31 U.S.C. § 3729(a)(1)(A) and (B).[9]

On or about May 19, 2022, Cognizant served requests pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*"), together with a subpoena on the DOL, seeking the production of certain documents (the "DOL Subpoena").[10]  Subsequently, on October 20, 2022, Cognizant served requests pursuant to *Touhy* and a subpoena on the IRS, seeking the production of certain documents (the "IRS Subpoena").[11]

### B.    THE DOL SUBPOENA AND *TOUHY* REQUESTS

Through the DOL Subpoena, Cognizant sought the following documents:

a)  All requests under the Freedom of Information Act ("FOIA") received by the Department of Labor regarding Cognizant's payment of wages or other compensation to its employees, including non-citizen employees in the United States on a visa ("visa workers"), and including payment of prevailing wages;

b)  Copies of any documents produced in response to the above-described FOIA requests;

c)  All audits, analyses, or reviews of Cognizant's payment to its employees authorized to work in the U.S. under temporary visas and payment of prevailing wages undertaken by, or at the direction of, the Department of Labor;

d)  All Department of Labor reports or analyses about payment of prevailing wages by employer sponsors under the H-1B program;[12] and

e)  All communications to, or from, third parties about Cognizant's payment of visa workers and payment of prevailing wages, including but not limited to communications with Relator or Relator's agents.[13]

---

[9] *See generally* Civ. No. 17-6317, Doc. No. 32.
[10] Civ. No. 23-3320, Doc. No. 1-6 at p. 5.
[11] Civ. No. 23-3320, Doc. No. 1-3 at p. 10.
[12] To aid with Request (d), Cognizant provided the DOL with the following search terms specifying the employer sponsors that are the subject of this Request: Tata Consultancy, Infosys, Deloitte, Capgemini, Accenture, Wipro, and IBM.  Civ. No. 23-3320, Doc. No. 1-9 at pp. 2-3.
[13] Civ. No. 23-3320, Doc. No. 1-6 at p. 3.  To aid with Request (e), Cognizant provided the following search terms identifying Relator's "agents":  Jonathan Rudnick; Daniel A. Kotchen; Daniel L. Low; Lindsey Frunert; Amanda Burns; Mark Hammervold; Karishma Shah; Michael

In the DOL Subpoena, Cognizant asserted that the sought-after documents relate to its defense under the Public Disclosure Bar and whether the alleged false statements were "material" within the FCA.[14]

Following service of the DOL Subpoena, Cognizant met and conferred with the DOL regarding the DOL Subpoena.[15]   The DOL objected at that time to Request (d) based on overbreadth and undue burden and to Request (e) based on overbreadth.[16]  Cognizant offered to consider narrowing Request (d) and provide a list of "Relator's agents" to narrow Request (e).[17]  Cognizant also provided search terms for Requests (e)[18] and (d).[19]   Subsequently, the DOL produced documents responsive to Requests (a), (b), (c), and, in part, (e).   Relevant here, in response to Request (e), the DOL declined to search emails containing the term "Cognizant" on the basis of overbreadth and undue burden.   In a letter dated October 7, 2022, the DOL advised Cognizant of its formal agency determination as to the DOL Subpoena and *Touhy* requests, re-asserting its previous objections and asserting new ones based on privilege.[20]

Thereafter, Cognizant and the DOL continued to meet and confer as to Request (d).   In so doing, Cognizant provided search terms relating to seven similarly situated employers (the "Similarly Situated Employers").   Following a search using those terms, the DOL notified Cognizant in a letter dated February 17, 2023 that Cognizant failed to comply with the DOL's

con Klemperer; Navid Soleymani; Navid Yadegar; Yadegar, Minoofar & Soleymani LLP; The Law Office of Jonathan Rudnick LLC; and Kotchen & Low LLP.

[14] Civ. No. 23-3320, Doc. No. 1-6 at p. 3.
[15] Civ. No. 17-6317, Doc. No. 129-3 at ¶ 5.
[16] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 5-6.
[17] Civ. No. 17-6317, Doc. No. 129-3 at ¶ 5.
[18] Civ. No. 23-3320, Doc. No. 1-7 at p. 2.
[19] Civ. No. 23-3320, Doc. No. 1-9 at pp. 2-3.
[20] Civ. No. 17-6317, Doc. No. 129-4.

*Touhy* requirements by not sufficiently describing the relevance of the records sought in Request (d) and that review and production of responsive documents located in the course of the DOL's search would be unduly burdensome.[21]  Primarily, the DOL disputed the merits of Cognizant's legal theory regarding the Public Disclosure Bar based on Third Circuit law, contending that public disclosures about comparator companies do not trigger the Bar.[22]  The DOL also maintained that Cognizant failed to identify why DOL information as to competitors' visa practices would be material to the DOL's determination of whether there was "reasonable cause" to believe that Cognizant violated certain visa requirements.[23]

### C.   THE IRS SUBPOENA AND *TOUHY* REQUESTS

Through the IRS Subpoena, Cognizant sought documents responsive to the following requests:

   a)  All requests under the Freedom of Information Act ("FOIA") that the IRS has received from August 22, 2007 to present related to the use of the H-1, L-1, or B-1 visa programs by Cognizant, including the payment of payroll taxes to the IRS from the salaries of employees dependent upon such visa programs, and any documents produced in response to those FOIA requests;

   b)  All documents and communications related to analyses, audits, or reviews that IRS has performed related to Cognizant's payment of payroll taxes and/or prevailing wages to visa-dependent workers from August 22, 2007 to present, whether made available to the public or not;

   c)  All documents and communications related to actions, analyses, reports, audits, or reviews that IRS has undertaken of employer sponsors' classification of visa-dependent workers from August 22, 2007 to present, whether made available to the public or not;

   d)  All communications to, or from, third parties about Cognizant's payment of payroll taxes for visa workers, including but not limited to

---

[21] *See* Civ. No. 17-6317, Doc. No. 129-5.
[22] Civ. No. 17-6317, Doc. No. 129-5 at pp. 3-5.
[23] Civ. No. 17-6317, Doc. No. 129-5 at p. 3.

communications with Relator or Relator's agents from August 22, 2007 to present;

e)  All agency analyses regarding the applicability of the Internal Revenue Code ("IRC") to claims, complaints, suits, or investigations under the FCA;

f)  All agency analyses regarding the obligation of the IRS to support or otherwise respond to suits or investigations under the FCA;

g)  All documents and communications relating to any audits, reviews, analyses, or investigations of Cognizant's payment of payroll taxes for tax years between 2007 and 2021; and

h)  All analyses or reports, and any documents or communications relating to such analyses or reports, regarding employer obligations to pay payroll taxes on wages paid to visa-dependent workers and/or prevailing wages to visa-dependent workers.   Responsive documents should include, but may not be limited to:

   i.  any analyses or reports regarding payroll tax obligations of employers who are not compliant with Prevailing Wage Requirements;

   ii.  all communications between IRS and the Department of Labor regarding payment of payroll taxes by employers found to be noncompliant with Prevailing Wage Requirements; and

   iii.  draft or final reviews, investigations, reports, or findings that payroll taxes were underpaid because an employer failed to pay legally required wage amounts.[24]

Cognizant excludes from the IRS Subpoena "any information that qualifies as a return or return information as defined by 26 U.S.C. § 6103(b)," except where such information is "reasonably segregable."[25]  In its *Touhy* requests to the IRS, Cognizant also analyzed the fourteen factors set forth in the Department of the Treasury's *Touhy* regulations.[26]

---

[24] Civ. No. 23-3320, Doc. No. 1-3 at pp. 3-4.
[25] Civ. No. 23-3320, Doc. No. 1-3 at p. 3 (quoting *Cause of Action v. Internal Revenue Serv.*, 125 F. Supp. 3d 145, 164 (D.D.C. 2015)).
[26] *See* Civ. No. 23-3320, Doc. No. 1-3 at pp. 5-9.

The IRS responded via letter dated December 14, 2022, declining to produce documents and requesting that Cognizant withdraw its subpoena.[27]  The IRS broadly objected to the Subpoena on the basis that it was procedurally improper as seeking return information documents not subject to disclosure pursuant to 26 U.S.C. § 6103(b).[28]  The parties met and conferred on the issues, but, ultimately, the IRS declined to produce any records responsive to the IRS Subpoena.

Through a February 17, 2023 letter, the IRS informed Cognizant of its final agency determination.  The IRS contended that 26 U.S.C. § 6103(b)(1) precluded the disclosure of the sought-after information and documents because Cognizant sought "return information" relating to other taxpayers for use in a non-IRS matter without those other taxpayers' consent.  The IRS also objected on the basis of overbreadth and undue burden.

### D.   THE MOTION TO COMPEL AND CROSS-MOTIONS TO QUASH

On January 27, 2023, Cognizant filed in the Underlying Action a Motion to Compel the Agencies to respond to the respective subpoenas.[29]  The Agencies opposed the Motion and each cross-moved to quash Cognizant's subpoenas.[30]  On March 13, 2023, Cognizant replied in support of its Motion and in opposition to each Cross-Motion.[31]  On April 6, 2023, the Court denied without prejudice both Cognizant's Motion and the Agencies' Cross-Motions as not properly presented before this Court pursuant to Federal Rules of Civil Procedure 37(a)(2) and 45(d)(3).[32]

---

[27] Civ. No. 23-3320, Doc. No. 1-2 at pp. 3-4.
[28] Civ. No. 23-3320, Doc. No. 1-4 at pp. 2-3.
[29] *See* Civ. No. 23-3320, Doc. No. 1.
[30] Civ. No. 17-6317, Doc. Nos. 128, 129.
[31] Civ. No. 17-6317, Doc. Nos. 138, 139.
[32] Civ. No. 17-6317, Doc. No. 150.

On April 28, 2023, Cognizant initiated the above-captioned matter through a Motion to Compel Discovery filed in the District Court for the District of Columbia.[33]  On the same day, Cognizant filed a Consent Motion to Transfer this action to the District of New Jersey, citing the pending Underlying Action.[34]  On June 7, 2023, the District of Columbia transferred this action to this Court.[35]

With respect to the DOL, Cognizant emphasizes that "the remaining dispute . . . principally concerns" Requests (d) and (e).[36]  Cognizant contends that the DOL's burden arguments are speculative and that DOL's failure to produce a privilege log renders its privilege assertions improper.[37]  The DOL maintains that Cognizant's requests are unduly burdensome and would require the agency to expend substantial time and resources disproportionate to the documents' importance to the underlying action.[38]

DOL also asserts that its privilege objections are properly raised without a privilege log, particularly in light of its descriptions of the documents sought.[39]  In support of those privilege objections, DOL attached to its Opposition and Cross-Motion two declarations: the Declaration of Naixa C. Franquiz (the "Franquiz Declaration"), a Senior Advisor in the DOL's Wage and Hour Division, Office of Regional Enforcement; and the Declaration of Ann M. Marcellino (the "Marcellino Declaration"), an Attorney for FOIA and Information Law at the Office of the Solicitor within the DOL.[40]  The Franquiz Declaration asserts that the DOL, claiming the

---

[33] Civ. No. 23-3320, Doc. No. 1.
[34] *See generally* Civ. No. 23-3320, Doc. No. 2.
[35] Civ. No. 23-3320, Doc. No. 7.
[36] Civ. No. 17-6317, Doc. No. 139 at pp. 6-7, 12-15.
[37] Civ. No. 23-3320, Doc. No. 1 at pp. 30-32.
[38] Civ. No. 17-6317, Doc. No. 129-1 at pp. 28-29.
[39] Civ. No. 17-6317, Doc. No. 129-1 at pp. 30-31.
[40] Civ. No. 17-6317, Doc. No. 129-3 and 129-6.

Investigatory Files Privilege, withheld files related to open law enforcement matters which could reasonably be expected to interfere with the DOL's investigations.[41]   According to that Declaration, investigatory case files "typically" contain pre-decisional, internal, non-public information about confidential informants that would be protected by the deliberative process and informant's privileges.[42]   The Franquiz Declaration also concludes that the DOL Subpoena is unduly burdensome because they would require ten district offices to collect a substantial number of documents, requiring at least eight weeks of work to identify and retrieve the files in preparation for a privilege review.[43]

Through the Marcellino Declaration, the DOL details its efforts to meet and confer with Cognizant to narrow the DOL Requests consistent with the department's objections,[44]  as well as the DOL's reasonable efforts to search for and review potentially responsive documents:  From July 6, 2022 through September 2022, the DOL searched its FOIA system, Wage and Hour Division (WHD) investigatory files, and the DOL's email system for documents responsive to Cognizant's requests.[45] DOL ultimately produced several thousand pages of documents, including determination letters related to seven WHD investigations regarding Cognizant's alleged failure to pay prevailing wages, though DOL withheld the balance of those investigatory files as privileged under the deliberative process and informant's privileges.[46]  DOL contends that if it were required to detail the precise documents contained in those files, it would reveal information

---

[41] *See* Civ. No. 17-6317, Doc. No. 129-6 at ¶¶ 8-9.
[42] Civ. No. 17-6317, Doc. No. 129-6 at ¶ 9.
[43] Civ. No. 17-6317, Doc. No. 129-6 at ¶¶ 10-15.
[44] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 6-7, 15, 19.
[45] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 7-8; *see also* Civ. No. 23-3320, Doc. No. 1-7 at p. 2.
[46] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 11-12.

regarding how DOL conducts its investigations as well as details pertaining to open investigations, each of which is protected by the investigatory privilege.[47]

Beginning in October 2022, the DOL reviewed documents potentially relevant to the list of Similarly Situated Employers provided by Cognizant in connection with Request (e), ultimately producing 571 pages of emails.[48]  Notably, DOL did not search its email database for the term "Cognizant," asserting that such a search was overbroad, leading to results that would be unduly burdensome to review for responsiveness.[49]  On January 20, 2023, the DOL met and conferred with Cognizant, asserting that Request (d) was unduly burdensome; DOL ultimately provided a formal agency determination letter to that effect.[50]  The DOL maintains that to the extent that it possesses records detailing its legal interpretations of visa programs and prevailing wage requirements, those documents would be protected under the deliberative process or attorney-client privileges, as well as the work product doctrine.[51]

For these reasons, the DOL asserts that its denial of Cognizant's *Touhy* request was not arbitrary and capricious and, alternatively, that the DOL Subpoena is unduly burdensome and therefore impermissible under Federal Rule of Civil Procedure 45.  The DOL also cross-moves to quash the DOL Subpoena under Rule 45 based on Cognizant's failure to demonstrate the relevance of its requests, especially in light of the burden they would impose upon DOL.[52]

As to the IRS, Cognizant asserts that the IRS Subpoena specifically excludes protected "tax returns" or "return information," and so it seeks only relevant, non-return information in

---

[47] Civ. No. 17-6317, Doc. No. 129-3 at ¶ 13, 22.
[48] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 15-17.
[49] Civ. No. 17-6317, Doc. No. 129-3 at ¶ 17.
[50] Civ. No. 17-6317, Doc. No. 129-3 at ¶¶ 19, 21; *see also* Civ. No. 17-6317, Doc. No. 129-5.
[51] Civ. No. 17-6317, Doc. No. 129-3 at ¶ 23.
[52] Civ. No. 17-6317, Doc. No. 129-1 at pp. 35-38.

compliance with the Treasury Department's *Touhy* regulations.[53]  Cognizant also asserts that even if the requested documents are "return information," the IRS must assert its objections in a privilege log.[54]  The IRS responds that its denial of Cognizant's *Touhy* request was not arbitrary or capricious, as the documents sought constitute "return information" protected from disclosure by 26 U.S.C. § 6103, and, therefore, the IRS need not conduct a reasonable search for responsive documents.[55]  In support of this position, the IRS attaches the Declaration of Sarah Tate, Associate Chief Counsel of the IRS (the "Tate Declaration"), which asserts that IRS Requests (a) through (d), (g), and (h) seek protected "return information," and Cognizant must obtain consent of the affected taxpayers before the IRS may disclose such documents.[56]

Even so, the IRS argues that Cognizant's failure to specify the volume of documents it is seeking violates the Treasury Department's *Touhy* regulations.[57]  On that basis, the IRS requested on numerous occasions that Cognizant withdraw its subpoena.[58]  Indeed, the IRS relies upon the Declaration of Lisa M. Rodriguez, Associate Area Counsel for the Office of Division Counsel, Large Business & International, in the IRS's Office of Chief Counsel (the "Rodriguez Declaration"), for the proposition that even Cognizant recognized that the IRS Requests were overbroad and too vague to satisfy regulatory requirements.  Specifically, the Rodriguez Declaration notes that Cognizant's counsel "admitted" that Cognizant did "not know exactly what documents are sought" through the IRS Requests.[59]

---

[53] Civ. No. 23-3320, Doc. No. 1-1 at pp. 23-27.
[54] Civ. No. 23-3320, Doc. No. 1-1 at p. 26.
[55] Civ. No. 17-6317, Doc. No. 128-1 at pp. 18-24, 27-28.
[56] Civ. No. 17-6317, Doc. No. 128-3 at ¶¶ 10, 15-17.
[57] Civ. No. 17-6317, Doc. No. 128-1 at p. 26.
[58] Civ. No. 17-6317, Doc. No. 128-5 at ¶¶ 5, 8-9.
[59] Civ. No. 17-6317, Doc. No. 128-5 at ¶¶ 11-12.

The IRS also contends that responsive information could be subject to the work product doctrine and attorney-client and/or deliberative process privileges if the documents contain the IRS's interpretation or application of law relating to visa programs and/or wage requirements.[60] In support of these privilege arguments, the Tate Declaration asserts that "agency analyses of law that are internal and non-public are privileged" under those doctrines.[61] The Tate Declaration also states that any "generic or statistical information" responsive to the IRS Subpoena is protected by the deliberative process and attorney-client privileges, as well as the work product doctrine, because such information "reflect[s] legal advice" provided by the IRS's counsel.[62]

In further support of its privilege objections, the IRS proffers the Declaration of Richard Hatfield, Chief of the Public Contracts & Technology Law ("PCTL") branch of General Legal Services at the IRS's Office of Chief Counsel (the "Hatfield Declaration"). Through the Hatfield Declaration, the IRS asserts that Requests (e) and (f) seek analyses of the Internal Revenue Code with respect to FCA investigations, including the applicability of the "Tax Bar" pursuant to 31 U.S.C. § 3729(e). The Hatfield Declaration notes that the PCTL analyzes FCA claims in the context of Department of Justice requests for assistance in connection with litigation, and so PCTL conducts only case-specific analyses of the FCA's applicability to the Internal Revenue Code in connection with those litigation requests.[63]

The IRS also offers a Declaration of Daniel R. Lauer, Director of Examination, Specialty Tax, in the IRS's Small Business/Self-Employed Division (the "Lauer Declaration"). Mr. Lauer asserts that, based on his knowledge and experience, the IRS does not use visa-related information

---

[60] Civ. No. 17-6317, Doc. No. 128-1 at p. 33.
[61] Civ. No. 17-6317, Doc. No. 128-3 at ¶¶ 12-14.
[62] Civ. No. 17-6317, Doc. No. 128-3 at ¶ 12.
[63] Civ. No. 17-6317, Doc. No. 128-6 at ¶ 5.

to identify employers for employment tax examination or locate non-taxpayer specific analyses, reviews, or reports concerning the classification of visa workers.[64] Mr. Lauer further avers that he is not aware of any "analyses or reports regarding employer obligations to pay payroll taxes on wages paid to visa-dependent workers and/or prevailing wages to visa-dependent workers that are not taxpayer specific and do not include taxpayer return information . . . ."[65]

The IRS further argues in the alternative that the Court should quash the IRS subpoena under Federal Rule of Civil Procedure 45 because Cognizant seeks irrelevant internal agency documents.[66] It contends that any relevance of the documents sought is outweighed by the substantial burden that their collection and review would impose on the agency, given the sixteen-year time span of the IRS Subpoena and the belief that Requests (b), (d), (g), and (h) seek information already within Cognizant's possession or control.[67]

## II.   LEGAL STANDARDS

Generally, parties may seek discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and that is "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The information need not be admissible at trial. *Id.* The scope of discovery is broad but not limitless, and discovery cannot "be used as a general fishing expedition." *Burgess v. Galloway*, Civ. No. 20-6744, 2021 WL 2661290, at *2 (D.N.J. Jan. 28, 2021) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

---

[64] Civ. No. 17-6317, Doc. No. 128-4 at ¶¶ 6-8.
[65] Civ. No. 17-6317, Doc. No. 128-4 at ¶ 8.
[66] Civ. No. 17-6317, Doc. No. 128-1 at pp. 30-32, 35-37.
[67] Civ. No. 17-6317, Doc. No. 128-1 at pp. 35-37.

A party may move to compel discovery from a non-party. Fed. R. Civ. P. 45(d)(2)(B)(i); *see also* Fed. R. Civ. P. 37(a). A party seeking to compel records from a non-party federal governmental agency may seek review either "through a separate action commenced pursuant to the [APA], or alternatively, in the Court from which the subpoena was served pursuant to Rule 45." *Aiken v. Eady*, Civ. No. 14-1811, 2016 WL 452135, at *5 n.2 (D.N.J. Feb. 4, 2016) (noting that while there is no binding authority on whether an ancillary action under the APA must be filed or whether the issue may be considered as a discovery dispute in the underlying case, "[t]he majority view seems to be to consider the dispute as a discovery matter in the underlying litigation" (citing *Johnson v. Folino*, 528 F. Supp. 2d 548, 550-51 (E.D. Pa. 2007))). A district court "has broad discretion regarding the enforcement of subpoenas." *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, Civ. No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted).

Here, Cognizant and the Agencies dispute whether the applicable standard of review arises under Rule 45 of the Federal Rules of Civil Procedure or the APA.[68] The applicable standard in this context remains unresolved; accordingly, the Court addresses both the APA and Rule 45. *See Mickendrow v. Watner*, Civ. No. 20-007, 2021 WL 2821176, at *3 n.5, *5 (D.N.J. July 7, 2021) (after holding that agency's decision was not arbitrary and capricious, declining to conduct "the less deferential Rule 45 analysis" as "the result would be the same"); *Johnson*, 528 F. Supp. at 551 (applying Rule 45 where a motion to compel would not be granted under either standard); *see also Harris v. McDonald*, Civ. No. 21-1851, 2022 WL 3599394, at *2 (M.D. Pa. Aug. 23, 2022) (same); *Fermaintt v. McWane, Inc.*, Civ. No. 06-5983, 2008 WL 11383665, at *4 (D.N.J. Dec. 17, 2008).

---

[68] The parties do not dispute that the Motions are properly presented to this Court without the need to file an ancillary action under the APA.

## A.  THE APA

A party contesting government activity under the APA must show that the agency action was arbitrary and capricious.  5. U.S.C. § 706(2)(A).  A court reviewing an agency action under the APA cannot substitute its own judgement but will narrowly view the action "based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. ---, ---, 140 S. Ct. 1891, 1905 (2020) (internal citations and editing and quotation marks omitted).  The party challenging an agency action bears the burden of showing that the action was not rational, but rather was arbitrary and capricious.  *See Am. Farm Bureau Fed'n v. E.P.A.*, 984 F. Supp. 2d 289, 309 (M.D. Pa. 2013), *aff'd*, 792 F.3d 281 (3d Cir. 2015) (citing *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 704 (10th Cir. 2010); *Taggart v. GMAC Mortg., LLC*, Civ. No. 12-415, 2013 WL 4079655, at *3 n. 6 (E.D. Pa. Aug. 12, 2013)).  As a result, a court will not set aside the Agencies' decisions as to the Subpoenas if the decisions were rational and based on the relevant applicable factors.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

## B.  FEDERAL RULE OF CIVIL PROCEDURE 45

Pursuant to the Federal Rules of Civil Procedure, the Court may compel a non-party to produce documents or permit an inspection of records.  *See* Fed. R. Civ. P. 34(c); Fed. R. Civ. P. 45(d), (e).  The scope of discovery as defined by Rule 26 similarly applies to discovery sought via a Rule 45 subpoena on a non-party.  *See in re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021); *accord E.S. by and through Sanchez v. Elizabeth Bd. of Educ.*, Civ. No. 20-1027, 2022 WL 2106382, at *2 (D.N.J. June 10, 2022).  Nevertheless, "a non-party to litigation is afforded greater protection from discovery than a party."  *Burgess*, 2021 WL 2661290, at *3 (citing *Chazanow v. Sussex Bank*, Civ. No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014)).

In certain instances, the Court has authority to modify a subpoena and "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or wavier applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv); *see also Schmulovich v. 1161 Rt. 9 LLC*, Civ. No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007). An undue burden can exist when the subpoena is "unreasonable or oppressive." *In re Lazardis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011) (quoting *Schmulovich*, 2007 WL 2362598, at *4).

## III.   DISCUSSION

As a threshold matter, the Court recognizes that the Agencies, while technically non-parties to the Underlying Action, are not disinterested. Indeed, in the FCA context, the United States has an interest in and rights to this Underlying Action as a real party in interest. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 430 (2023) ("Even as a non-party, the Government retains an interest in the suit, and possesses specified rights."); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). While the United States declined to intervene, the United States may subsequently intervene, should it choose to do so. 31 U.S.C. § 3730(c)(3). Moreover, the Underlying Action asserts theories that relate to whether Cognizant ultimately failed to pay the taxes that would have otherwise been due to the United States had Cognizant not violated the FCA. The IRS and DOL, therefore, have some interest in the outcome of the matter.

### A.   THE DOL SUBPOENA

As to the DOL, Cognizant's Motion focuses on Requests (d) and (e) of the DOL Subpoena. Applying the APA standard, which is more deferential to the Agencies, the Court concludes that the DOL arbitrarily and capriciously refused to search and produce any responsive documents.

1.      *The DOL'S Touhy Regulations*

The DOL has promulgated its own set of *Touhy* regulations governing requests to produce records pursuant to 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). A person requesting records from the DOL must submit a "written summary of the information sought and its relevance to the proceeding in connection with which it was served."  29 C.F.R. § 2.21.  Absent approval of the Deputy Solicitor of Labor or a designee, DOL employees are prohibited from furnishing DOL materials or information in response to a subpoena or *Touhy* request.  *See* 29 C.F.R. § 2.22.  In determining whether to lift Section 2.22's prohibition, the Deputy Solicitor must weigh the requestor's need for the information sought against the DOL's public policy concerns, including "centralizing the dissemination of information of the agency (i.e. restricting investigators from expressing opinions on policy matters), minimizing governmental involvement in a controversial matters unrelated to official business and avoiding the expenditure of governmental time and money for private purposes."  *Fermaintt*, 2008 WL 11383665, at \*5 (quoting *Baker v. Dep't of Labor*, 31 F. Supp. 2d 985, 987 (S.D. Fla. 1998)) (internal quotation omitted).  To overcome the DOL's public policy concerns, a requestor must show that: (1) the information is relevant and essential to its case; (2) the information is not available through alternative means; and (3) "that a significant injustice would ensue if the desired . . . records were not to be made available."  *Ayres v. Chester Cty.*, Civ. No. 07-3328, 2008 WL 11515686, at \*1 (E.D. Pa. Jan. 22. 2008) (internal quotation marks omitted) (quoting *Herr v. McCormick Grain-The Heiman Co.*, Civ. No. 92-1321, 1994 WL 324558, at \*2 (D. Kan. June 28, 1994)).

2.      *Application of the APA*

When considering whether an agency decision was arbitrary and capricious, "a court is not to substitute its judgment for that of the agency."  *Dep't of Homeland Sec.*, 140 S. Ct. at 1905

17

(internal quotation marks and citation omitted); *accord Motor Vehicle Mfrs.*, 463 U.S. at 43. However, an agency must nevertheless base its decision on the factors available under the *Touhy* regulations to withstand scrutiny.

Here, Cognizant sufficiently complied with the DOL's *Touhy* requirements. *See* 29 C.F.R. § 2.21. In its formal agency decision dated October 7, 2022, the DOL did not argue that Cognizant failed to meet the *Touhy* regulations.[69] Rather, it was only after further meeting and conferring on the scope of Request (d) that DOL took the position that Cognizant failed to meet those regulations in its February 17, 2023 letter by contending that Cognizant only generally asserted the relevancy and need for the sought-after information, making "no attempt to substantively address the factors" of 29 C.F.R. § 2.21.[70] However, the DOL was well aware of Cognizant's proffer of relevancy: the parties discussed and exchanged discussions of case law as to whether the information was relevant to the Underlying Action.[71] As laid out in the DOL's February 17, 2023 letter, the issue was not that Cognizant did not address the balancing of the burden on DOL with the need for the information, but rather that the DOL took a different perspective on the case law regarding the triggering of the Public Disclosure Bar.[72] Thus, the Court finds that any decision to refuse to respond to the DOL Subpoena on the basis that Cognizant failed to meet the *Touhy* regulations was arbitrary and capricious.

Furthermore, Requests (d) and (e) are sufficiently relevant to the claims and defenses in the Underlying Action. Cognizant's narrowing of those Requests through the proffered search terms and limitations renders the DOL's decision to stand on its overbreadth objection arbitrary

---

[69] Civ. No. 17-6317, Doc. No. 129-4.
[70] Civ. No. 17-6317, Doc. No. 129-5 at p. 2.
[71] *See* Civ. No. 17-6317, Doc. No. 129-5 at pp. 2-3.
[72] Civ. No. 17-6317, Doc. No. 129-5 at pp. 2-4.

and capricious.   Request (d) seeks information relevant to the issues relating to the Public Disclosure Bar and materiality under the FCA.   Indeed, the Public Disclosure Bar requires dismissal of a FCA action where the Relator's allegations have been previously disclosed, *inter alia*, in a "Federal report, hearing, audit, or investigation[.]" 31 U.S.C. § 3730(e)(4)(A); *see, e.g.*, *United States ex rel. Carson v. Select Rehab., Inc.*, Civ. No. 15-5708, 2023 WL 5339605, at *12-13 (E.D. Pa. Aug. 18, 2023) (discussing where allegations against entities in an industry may or may not trigger the Public Disclosure Bar).   While the DOL contests whether the sought-after documents would be sufficient to trigger the Public Disclosure Bar, the Court need not make such a determination at this stage to find that the documents are relevant for discovery purposes in the Underlying Action.   Request (d) also seeks documents that may weigh on the issue of materiality based on the nature of the claims asserted by the Relator in the Underlying Action.   *See United States ex rel. Druding v. Care Alternatives*, 81 F.4th 361, 367 (3d Cir. 2023) (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 n.5, 194-95 (2016)) (discussing factors to consider under materiality requirement of the FCA).   Further, there can be no dispute that DOL emails relating to "Cognizant" (as sought through Request (e)) may be relevant to the Underlying Action.

In rejecting the Subpoena, the DOL appears to have supplanted Cognizant's view of the case law as to the Public Disclosure Bar and materiality with its own and, in doing so, failed to appropriately weigh the need for the information against any of the agency's public policy concerns.   *See Fermaintt*, 2008 WL 11383665, at *5; *see also United States ex rel. Lewis v. Walker*, Civ. No. 06-16, 2009 WL 2611522, at *4 (M.D. Ga. Aug. 21, 2009) (concluding agency's relevance determination was based on "unsubstantiated and subjective" evidence, and thus arbitrary and capricious).   Accordingly, a determination that the DOL need not respond to these

requests based on overbreadth was arbitrary and capricious because the DOL clearly erred in failing to consider the potential relevancy of the requested documents as limited by Cognizant in the meet and confer process.

The DOL also asserts that its final agency decision is not arbitrary and capricious because responding in full to Requests (d) and (e) would be unduly burdensome on the agency and could invoke certain privileges.  When balancing a requestor's need for documents against the DOL's public policy concerns, the DOL should consider its interest in limiting the expenditure of government resources unrelated to its official business and/or for merely private purposes.  *See Fermaintt*, 2008 WL 11383665, at *5.  The DOL proffers that responding to Request (d) even as limited by Cognizant and completing the "Cognizant" search in its emails in respond to Request (e) would involve multiple offices over the span of potentially at least eight weeks of work, with the number of "man hours" depending on the number and format of any responsive files.[73]

Burdens imposed through a *Touhy* request are a significant factor to be considered. However, here, considering the DOL's view on the lack of relevancy of the sought-after documents, it is not clear that the DOL considered its burden concerns in the context of this *qui tam* matter, where the United States and its agencies, including the DOL, may have an interest in the ultimate outcome.  Such context matters where a search and production of potentially responsive documents is not merely for private purposes.  *See, e.g.*, *Schroeder v. United States Dep't of Veterans Affairs*, 673 F. Supp. 3d 1204, 1227 (D. Kan. 2023) (finding agency's denial of *Touhy* request arbitrary and capricious where it "failed to consider an important aspect of the

---

[73] *See* Civ. No. 17-6317, Doc. No. 129-6 at ¶¶ 10-15, and Doc. No. 129-3 at ¶¶ 19, 21.

problem": a party's need for discovery to defend against claims arising under the FCA (internal quotation marks omitted)).

Furthermore, while the DOL has proffered through declarations that certain investigatory files "typically" contain information that would be subject to various privileges, absent a privilege log or more information as to the specific documents at issue, the Court is unable to sustain the DOL's privilege objections to the Subpoena. *See United States ex rel. Franchitti v. Cognizant Tech. Sol. Corp.*, No. 17-6317, 2023 WL 2759075, at *7 (D.N.J. Apr. 3, 2023). Accordingly, the DOL's denial to Requests (d) and (e) was arbitrary and capricious. For the same reasons, both the APA and the more lenient standard under Rule 45 warrant a grant of Cognizant's Motion to Compel and a denial of the DOL's Cross-Motion to Quash. *See Mickendrow*, 2021 WL 2821176, at *5.

### B. THE IRS SUBPOENA

Turning to the IRS Subpoena, to determine if the IRS's final agency decision is arbitrary and capricious, the Court considers whether Cognizant seeks only protected "return information" and whether the IRS based its denial on the relevant facts under its *Touhy* regulations.

#### 1. *The IRS's Touhy Regulations*

The Department of the Treasury has promulgated regulations pursuant to 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), to apply to requests to produce its records. *See* 5 U.S.C. § 301; 26 C.F.R. § 301.9000-1 *et seq*. Accordingly, to obtain records in the possession of the Department of the Treasury, including the IRS, a person seeking the production of documents in a "non-IRS matter"[74] must submit a written statement that, in relevant part: (1)

---

[74] A "non-IRS matter" is any matter that is unrelated to official IRS business or "to any law administered by or concerning the IRS," as well as any matter not before Congress and unrelated

summarizes the proceeding and the issues involved, the information sought, the relevance of such information, and the "estimated volume" of documents requested; (2) indicates whether the documents sought are a "return" or "return information" as defined by 26 U.S.C. § 6103(b); and (3) indicates whether the information sought is available from alternative sources. *See* 26 C.F.R. § 301.9000-5(a). In determining whether it may produce records, the IRS must consider whether disclosure is precluded under 26 C.F.R. § 301.9000-2. *See* 26 C.F.R. § 301.9000-2(a)-(b) (requiring consideration of whether disclosure of IRS records would: be contrary to federal law; reveal sensitive or classified information; reveal investigatory information or interfere with investigatory proceedings; or reveal information protected by an applicable privilege); 26 C.F.R. § 301.9000-2(c) (requiring, in non-IRS matters, consideration of the potential effect of the matter on the administration of internal revenue laws; the importance of the legal issues involved; the availability of information sought from other sources; and whether the request is unduly burdensome).

In addition, 26 U.S.C. § 6103 prohibits disclosure, except as otherwise authorized by the Internal Revenue Code, of a "return"[75] or "return information."[76] To qualify as "return

---

to the administration of "internal revenue laws or other laws administered by or concerning the IRS, or to IRS records or information." Disclosure, Testimony, and Production of Documents, Internal Revenue Manual, at § 34.9.1.2(6)-(8) (2021).

[75] A "return" is defined as "any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of th[e Internal Revenue Code] which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed." 26 U.S.C. § 6103(b)(1).

[76] "Return information" includes, as relevant here, "a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return is, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability . . . of any person under this title for any tax, penalty, interest, fine, forfeiture, or other

information," documents need not identify a specific taxpayer but contain information that is

"unique to a particular taxpayer." *Cause of Action*, 125 F. Supp. 3d at 164 (internal quotations

omitted).  "When a record that is not itself 'return information' contains both return information

and non-return information, the non-return information can be released if it is reasonably

segregable." *Id.*; *see also Tax Analysts v. IRS*, 117 F.3d 607, 616, 620 (D.C. Cir. 1997) (holding

that IRS could redact "true return information" from certain documents but that legal analyses

therein did not qualify as "return information"); *but see Church of Scientology v. IRS*, 484 U.S. 9,

16 (1987) ("Congress did not intend [Section 6103] to allow the disclosure of otherwise

confidential return information merely by the redaction of identifying details.").  To obtain

documents that contain "return information," the requestor must have an authorization from the

relevant taxpayer, except where the information cannot be directly or indirectly associated with an

individual taxpayer.  26 U.S.C. § 6103(c); 26 C.F.R. § 301.6103(c)-1.

## 2.   *Application of the APA*

In response to the IRS Subpoena, the IRS argues that the requests seek "return information"

that is protected from disclosure by the Internal Revenue Code and therefore it must deny the

Requests.  The IRS further asserts that any responsive non-return information would not be

reasonably segregable from the protected return information because the IRS Subpoena seeks

documents directly related to individual taxpayers.[77]  The IRS also contends that even return

information related to Cognizant itself cannot be disclosed in response to the IRS Subpoena

---

imposition, or offense[.]"  26 U.S.C. § 6103(b)(2)(A).  "Return information" may also include any
portion of a "written determination or any background file document relating to such written
determination . . . ."  26 U.S.C. § 6103(b)(2)(B); *see also* 26 U.S.C. § 6110(b)(1)(A) (defining
"written determination" as "a ruling, determination letter, technical advice memorandum, or Chief
Counsel advice").  However, "return information" excludes any data which cannot directly or
indirectly be associated with a particular taxpayer.  26 U.S.C. § 6103(b)(2).

[77] Civ. No. 17-6317, Doc. No. 128-1 at p. 19.

because Cognizant has not furnished the taxpayer's consent as required pursuant to 26 C.F.R. § 301.6103(c)-1.  The IRS further objects to the Subpoena based on overbreadth, as Cognizant seeks documents not relevant to the Underlying Action, and because it would unduly burden the agency.[78]  In addition, the IRS contests that Cognizant failed to comply with the agency's *Touhy* regulations at 26 C.F.R. § 301.9000-5(a) because the Subpoena is not specific enough and did not identify the estimated volume of documents sought through the requests.  The IRS further asserts that responsive documents would include those protected from disclosure through the work product doctrine and attorney-client and deliberative process privileges.

In response, Cognizant argues that it expressly carved out from its requests any "return information," except to the extent that such information is "reasonably segregable," as well as any information that would be subject to an applicable privilege or protection.[79]  Cognizant further points out that its requests were specific enough to comply with the *Touhy* regulations, noting that it cannot plausibly estimate the volume of documents of which it is not aware or provide more specificity as to the agency's records that have not been disclosed.

With the IRS Subpoena, Cognizant's *Touhy* request set forth its assertions as to the various factors pursuant to 26 C.F.R. § 301.9000-2 and -5, noting that it would work with the IRS to limit the burden of the requests.  Although the IRS and Cognizant had discussions regarding the Subpoena, it appears that the IRS did not assert the technical failure to comply with the *Touhy* regulations (by failing to set forth the "estimated volume of IRS records involved" or establish that some of the responsive documents could be available from other sources) until its February 17,

---

[78]  Civ. No. 17-6317, Doc. No. 128-1 at pp. 30-33, 35-37.
[79]  *See* Civ. No. 23-3320, Doc. No. 1-3 (*Touhy* request to the IRS).

2023 agency decision letter.[80]   Notably, the IRS may waive the strict compliance with a written statement under the *Touhy* regulations for good cause.   26 C.F.R. § 301.9000-5(b).   Here, Cognizant provided as much information available to it.   Denying the IRS Subpoena on the basis that Cognizant did not meet the *Touhy* regulations is elevating form over substance.[81]   *See Philpott v. City of Mason City, Iowa*, Civ. No. 09-3062, 2010 WL 11450401, at *3 (N.D. Iowa Sept. 15, 2010); *see also Biear v. Attorney General of the United States*, 905 F.3d 151, 157 (3d Cir. 2018) (finding, in the FOIA context, that it would be "counterintuitive" to require a requestor to identify specific units of an agency that might have the sought-after records).   Relying on such a justification, therefore, was arbitrary and capricious.

At the heart of the IRS objections, however, is the contention that Cognizant's requests seek "return information."   What strikes the Court, however, is that the IRS asserts such an objection without having conducted any search whatsoever to determine if documents responsive to the IRS Subpoena do indeed contain such information as defined in the IRC.   Without an identification of specific documents or categories of documents, a determination cannot be made that any document contains "return information" or whether such protected information can be reasonably segregable.   Indeed, following a reasonable search, the IRS may find that some documents may not be produced as containing "return information."   Yet, there is also the real possibility that responsive documents may be subject to disclosure as not containing "return information" or having non-return information that is reasonably segregable.   Denying a *Touhy*

---

[80]  *See* Civ. No. 17-6317, Doc. No. 128-2.
[81]  Any argument by the IRS that Cognizant failed to meet the *Touhy* regulations because some responsive documents may be available from other sources misapplies the plain language of the *Touhy* regulations.   26 C.F.R. § 301.9000-5(a)(7) requires a requesting party to state *whether* the sought after records are available from other sources.   Cognizant did that by stating that it was seeking records not available from other sources.   *See Philpott*, 2010 WL 11450401, at *3.

request on a broad sweeping objection because, hypothetically, some responsive documents may not ultimately be subject to disclosure was arbitrary and capricious. *See, e.g.*, *Schroeder*, 673 F. Supp. 3d at 1215 (finding agency's denial of *Touhy* request was arbitrary and capricious where agency denied request on basis that it purportedly sought identifying information but the request did not seek such information); *see also Kobach v. United States Election Assistance Comm'n*, 772 F.3d 1183, 1197 (10th Cir. 2014) (recognizing that a court applying the APA should consider if an agency "examined the relevant data and articulated a rational connection between the facts found and the decision made" (internal quotation marks and citation omitted)).

Further, the IRS's decision not to respond to the Subpoena on the bases that the requests are overbroad, unduly burdensome, and vague miss the mark.  While the IRS contends that Cognizant did not sufficiently demonstrate how the requested documents are relevant to the Underlying Action, such a contention runs counter to the evidence before the agency through the *Touhy* request.  *See Lewis*, 2009 WL 2611522, at *4 (concluding agency's relevance determination was based on "unsubstantiated and subjective" evidence, and thus arbitrary and capricious). Cognizant proffered sufficient information to the agency, showing the relevancy and importance of the sought-after records to the Underlying Action.  The IRS's failure to process the requests on the basis that the requests sought irrelevant information, therefore, was arbitrary and capricious.

Further, Cognizant tried through the meet and confer process to clarify with the IRS its requests to address the IRS's concerns that the requests are vague.  The IRS still refused to accept the clarifications and rather argues now that the Court should reject the IRS Subpoena because Cognizant has attempted to modify its requests.  The agency, however, cannot have it both ways: seek a party to clarify its *Touhy* request but then reject a clarification for not being part of the original request.  The IRS may indeed have valid concerns of burden; yet, based on the record

presented, the IRS considered those burdens in the context of weighing them against its own assessment of the relevancy of the sought-after records.[82]

In addition, while the IRS's concerns as to privileges and protections may have merit, such assertions do not justify the wholesale denial, or quashing, of the IRS Subpoena.[83]   Rather, such arguments should be raised in the context of specific documents, as discussed above.  There is no indication that the IRS conducted any review of potentially responsive records to determine which specific privileges apply to any responsive documents, and, furthermore, Cognizant has repeatedly made clear that it did not intend to seek documents subject to such protections.

Accordingly, the Court finds that the IRS's denial of the IRS Subpoena and *Touhy* requests ws arbitrary and capricious.  For that reason, the Court also finds that the Federal Rules of Civil Procedure warrant a grant of Cognizant's Motion to Compel and a denial of the IRS's Cross-Motion to Quash.

## IV.    CONCLUSION

For the reasons set forth above, the Agencies' decisions on the respective subpoenas and *Touhy* requests were arbitrary and capricious under the APA.  As such, the Court further finds that

---

[82]  *See* Civ. No. 17-6317, Doc. No. 128-1 at pp. 35-37.

[83]  Notably, the IRS did not assert any concerns relating to an applicable privilege in its February 17, 2023 final agency decision on Cognizant's *Touhy* request.  Because these privilege assertions were not made in the context of a "final agency action," it is not clear that the decision to deny the IRS Subpoena on this basis is fully ripe for the Court's review under the APA.  *See, e.g.*, *COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 275 (4th Cir. 1999) (assuming without deciding that agency reached a "final decision" not to comply with a subpoena based on counsel's representation during oral argument on pending motion).  Nevertheless, the Court need not address that issue and considers the IRS's objections in the context of the IRS's Motion to Quash brought pursuant to Rule 45 of the Federal Rules of Civil Procedure.

Rule 45 justifies an order compelling the Agencies to respond to the Subpoenas.  The Agencies have failed to meet their burden to quash the Subpoenas.

Accordingly, for good cause shown,

**IT IS**, **THEREFORE**, on this **8th** day of **May 2024** hereby

**ORDERED** that Cognizant's Motion to Compel (Doc. No. 1) is hereby **GRANTED**; and it is further

**ORDERED** that the Internal Revenue Service's Cross-Motion to Quash Cognizant's Subpoena (Civ. No. 17-6317, Doc. No. 128) is hereby **DENIED**; and it is further

**ORDERED** that the Department of Labor's Cross-Motion to Quash Cognizant's Subpoena (Civ. No. 17-6317, Doc. No. 129) is hereby **DENIED**; and it is further

**ORDERED** that the Clerk of Court is hereby directed to **TERMINATE** the Motion pending at Docket Entry No. 1; and it is further

**ORDERED** that the Clerk of Court shall hereby mark this matter **CLOSED**.

**SO ORDERED**.

*/s/ Rukhsanah L. Singh*
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**